# In the United States Court of Federal Claims

No. 26-870C

(Filed: October 2, 2026)

| | |
|---|---|
| **DR. CAMILLE KAMGA,** | ) |
| ***Plaintiff,*** | ) |
| **v.** | ) |
| **THE UNITED STATES,** | ) |
| ***Defendant.*** | ) |

## ORDER DENYING JOINT MOTION TO STAY

On June 12, 2026, Plaintiff, Dr. Camille Kamga, filed a complaint in this Court alleging that the United States Department of Transportation ("DOT") breached a grant agreement when the government terminated that agreement on May 2, 2025. ECF No. 1 ("Compl.") ¶¶ 4, 57–84.[1] His prayer for relief asks this Court for one thing: "judgment in his favor and against the United States in an amount to be determined at trial, as well as any allowable interest, fees, costs, and expenses[.]" Compl. at 26. Eleven days later, on June 23, 2026, Dr. Kamga filed a second complaint, arising from the same termination, in the United States District Court for the Southern District of New York. ECF No. 10-1 ("SDNY Compl."). That complaint pleads First Amendment, equal protection, procedural due process, and Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(B)–(D), claims, and it seeks declaratory, vacatur, and injunctive relief. SDNY Compl. ¶¶ 62–114 & at 31–32.

[1] Dr. Kamga's complaint explains that, in 2023, DOT announced its selection of the Center for Social and Economic Mobility for People And Communities through Transportation ("SEMPACT") to serve as a University Transportation Center ("UTC"). SEMPACT, led by City College of New York, covers Region 2 of the UTC program, which includes New York, New Jersey, Puerto Rico, and the U.S. Virgin Islands. Compl. at 1, 7. Dr. Kamga serves as SEMPACT's director. *Id.* at 6.

On August 11, 2026, the parties filed a joint motion to stay this case pending the resolution of the district court action based on three grounds: (1) judicial economy, (2) the risk of conflicting orders, and (3) the absence of prejudice to either party. ECF No. 10 ("Mot.") at 3–5. In the alternative, the government asks that its deadline to respond to the complaint, currently August 14, 2026, be extended to fourteen days from the denial of a stay. Mot. at 2, 5.

For the reasons explained below, this Court **DENIES** the motion, without prejudice, and **GRANTS** the government's alternative request for a limited extension of time.

## I. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). That inherent power, however, is not a license to defer as a matter of course; in exercising it, a court "must weigh competing interests and maintain an even balance." *Id.* at 254–55. The parties agree that *Landis* supplies the governing framework. Mot. at 3–4; *see also In re Amazon.com Servs. LLC*, 2026 WL 2221944, at *1 (Fed. Cir. Aug. 3, 2026) (citing *Landis*, 299 U.S. at 254–55, for the proposition that a trial court "has considerable discretion in managing its own docket, including when to stay proceedings"); *Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1084 (Fed. Cir. 2025) ("The Trade Court, like all trial courts, has 'broad discretion to manage [its] docket[ ].'" (alteration in original) (quoting *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 848–49 (Fed. Cir. 2008))).

That the motion is a joint one does not alter the analysis. A stay is an exercise of this Court's own authority to manage its docket, and the parties' agreement with each other cannot supply a justification that their motion does not. Nor does the absence of prejudice to either party, Mot. at 5, supply the missing justification. The parties seek a stay with no end date, pending the final resolution of the district court action, Mot. at 1, 5. Before this Court balances the interests on either side of such an indefinite stay, it "must first identify a pressing need for the stay." *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997). This Court thus has the duty to perform the weighing that *Landis* requires. *See* 299 U.S. at 254–55; *Cherokee Nation*, 124 F.3d at 1416 ("Overarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases properly before it.").

## II. DISCUSSION

### A. The Motion's Central Premise — That the District Court Action Could Resolve the Claims Pleaded Here — Is Doubtful After the Supreme Court's Decisions in *California* and *NIH*

Each of the movants' three primary arguments rests on a single premise: that the district court may grant relief that would render this Court's work unnecessary. *See* Mot. at 1 ("If plaintiff obtains a final district court order requiring DOT to reinstate the grant, this Court may have no reason to decide the lawfulness of DOT's grant termination or related damages claims."); *id.* at 5 ("the district court could reinstate plaintiff's grant agreement"); *id.* ("plaintiff's district court action could, in effect, result in the very relief sought in this case"). Twice within the past eighteen months, however, the Supreme Court has indicated otherwise.

In *Department of Education v. California*, the United States Supreme Court stayed a district court order that had enjoined a set of grant terminations and required the government to pay out past-due grant obligations. 604 U.S. 650, 650–52 (2025) (*per curiam*). The Supreme Court concluded that the government was "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA" because "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money.'" *California*, 604 U.S. at 651 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). "Instead," the Supreme Court explained, "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)).

The Supreme Court then applied *California* in *National Institutes of Health v. American Public Health Association*, a case involving grant terminations allegedly triggered by three Executive Orders, including the two at issue in this case. *Compare* 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring in the partial grant of the application for stay) (identifying Executive Order Nos. 14151 and 14173), *with* Compl. ¶¶ 37–38, *and* SDNY Compl. ¶¶ 17–18. The Supreme Court concluded that the APA's "'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *NIH*, 145 S. Ct. at 2659 (*per curiam*) (alteration in original) (quoting *California*, 604 U.S. at 651). In this Court's view, Justice Barrett's concurrence correctly explained that challenges to grant terminations "belong

in the Court of Federal Claims," and "if the CFC has exclusive jurisdiction over the grant terminations, . . . the plaintiffs cannot end-run that limit simply by packaging them with a challenge to agency guidance." *NIH,* 145 S. Ct. at 2661–62 (Barrett, J., concurring) (citing *California*, 604 U.S. at 650–52).

Both parties are plainly aware of all this. Dr. Kamga's complaint in this Court cites Justice Barrett's concurrence in its jurisdictional footnote, Compl. at 2 n.3 ("Dr. Kamga files this action to obtain money damages for DOT's termination of the SEMPACT grant . . . ."), and his district court complaint cites the same pages of the same opinion for the same proposition, SDNY Compl. at 4 n.1 ("Dr. Kamga files this action for equitable relief from Defendants' termination of the SEMPACT grant . . . ."). Despite pleadings written with an understanding of, and indeed reliance upon, the lines drawn in *California* and *NIH*, the parties now jointly ask this Court to proceed as though those lines were not there.

### B. The Parties Cannot Simply Recharacterize a Claim for Money as a Claim for an Injunction

The movants describe the two actions as seeking "largely mutually exclusive judicial relief." Mot. at 1. This Court is not persuaded.

The labels the parties attach to the two complaints matter considerably less than what each complaint asks each trial court to do. Dr. Kamga alleges that DOT was obligated to pay, that DOT did not pay, and that he was damaged as a result. Compl. ¶¶ 57–84. "The failure to pay money when due and owing is a paradigmatic breach of contract claim." *Hous. Auth. of the City of Slidell v. United States*, 149 Fed. Cl. 614, 626 (2020). An order directing DOT to reinstate the grant and release the withheld funds is, in substance, an order to pay money under a contract. As the undersigned has previously explained, "a complaint for money due and owing under a contract could always be recharacterized as a claim for specific performance (*i.e.,* injunctive relief to compel payment)" — but the relabeling changes neither the nature of the claim nor the forum in which Congress placed it. *Id.* at 628. To hold otherwise would "create a sort of Tucker Act Bizarro World in which some contract claims for money must be decided in district court and others in the Court of Federal Claims." *Id.* at 624 (footnote omitted); *see also NIH*, 145 S. Ct. at 2665 (Kavanaugh, J., concurring in part and dissenting in part) ("The core of plaintiffs' suit alleges that the Government unlawfully terminated their grants.

That is a breach of contract claim. And under the Tucker Act, such claims must be brought in the Court of Federal Claims, not federal district court.").

Nor does the "grant" label do any work here. A grant agreement that satisfies the ordinary requirements of a government contract is a contract enforceable under the Tucker Act. *Slidell,* 149 Fed. Cl. at 629 ("There is no suggestion . . . that procurement contracts are the only type of contracts enforceable under the Tucker Act or that grant agreements that satisfy all of the ordinary requirements for a government contract should not be classified as contracts enforceable under the Tucker Act." (quoting *Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411, 417 (1995))); *see id.* at 625 ("grant agreements would appear to satisfy all of the traditional requirements for an enforceable contract" (quoting *Cnty. of Suffolk, N.Y. v. United States*, 19 Cl. Ct. 295, 296 (1990))).

The upshot is that Dr. Kamga's case here presents a binary question that only this Court can answer: whether Dr. Kamga is entitled to damages for DOT's alleged breach of the SEMPACT grant agreement.

### C. The Sequencing the Movants Envision Is Proper Only When the Equitable Relief Has Value Independent of the Money

The movants also argue that a stay is justified by the risk that DOT "may be held to incompatible standards of conduct pursuant to different orders from two courts." Mot. at 5. But two-track litigation is precisely what the APA, the Tucker Act, and 28 U.S.C. § 1500 — all working together — produce.[2] As Justice Barrett explained, two-track

[2] Section 1500 of Title 28 of the United States Code precludes this Court's jurisdiction over claims already pending against the United States in other courts when the two suits share "substantially the same operative facts." *United States v. Tohono O'odham Nation*, 563 U.S. 307, 316–17 (2011) (holding that § 1500 barred a tribe's breach-of-fiduciary-duty suit in the Court of Federal Claims, filed the day after its district court suit, and explaining that "[t]he Nation could have filed in the CFC alone and if successful obtained monetary relief to compensate for any losses caused by the Government's breach of duty"). Application of § 1500 follows a two-step inquiry: First, this Court must determine "whether there is an *earlier-filed* 'suit or process' pending in another court"; second, whether the claims asserted in that case "are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Solenex, LLC v. United States*, 163 Fed. Cl. 128, 132 (2022) (emphasis added) (quoting *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013)), *appeal dismissed*, 2023 WL 5767720 (Fed. Cir. Sept. 7, 2023). Under binding circuit precedent, moreover, § 1500 deprives this Court of jurisdiction "only when the suit shall have been commenced in the other court before the claim was filed in this court." *Tecon Eng'rs, Inc. v. United States*, 343 F.2d 943, 949 (Ct. Cl. 1965); *see Res. Invs., Inc. v. United States*, 785 F.3d 660, 670 (Fed. Cir. 2015) ("We are bound by *Tecon*, which 'remains the law of this circuit.'" (footnote

litigation results from "'[t]he jurisdictional scheme governing actions against the United States,'" which "'often requires . . . plaintiffs to file two actions in different courts to obtain complete relief in connection with one set of facts.'" *NIH*, 145 S. Ct. at 2662 (Barrett, J., concurring) (alteration in original) (quoting *Tohono O'odham*, 563 U.S. at 323 (Sotomayor, J., concurring in the judgment)). If the mere existence of a parallel district court action sufficed to stay a Tucker Act case, then the forum Congress designated for contract claims against the United States would routinely stand down in favor of the very APA suits that the Supreme Court has said cannot reach those claims. But "[t]he APA's waiver of sovereign immunity may not be used 'to circumvent the jurisdictional and remedial limitations of the Tucker Act.'" *Douglas Timber Operators, Inc. v. Salazar*, 774 F. Supp. 2d 245, 261 (D.D.C. 2011) (quoting *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 893 (D.C. Cir. 1985)); *see Silver State Land LLC v. United States*, 148 Fed. Cl. 217, 260 (2020) (explaining that the D.C. Circuit, in reviewing an APA challenge, could not "have decided any of the contract issues, even assuming they had been litigated").

There is a sequence of the sort the movants describe that this Court has endorsed, and it is worth explaining why this case does not fit that paradigm. In *Chemehuevi Indian Tribe v. United States*, the undersigned explained that a plaintiff who cannot yet plead a money claim "may be able to seek an accounting from the district court and, depending upon the results of that action, then proceed in a case before this Court, perhaps without having to worry about the statute of limitations," and that "[t]he Supreme Court has recognized this sequence of actions as proper." 150 Fed. Cl. 181, 201 (2020) (citing *Tohono O'odham*, 563 U.S. at 316–17), *aff'd*, 104 F.4th 1314 (Fed. Cir. 2024).

The facts of *Chemehuevi* explain why that sequence made sense in that procedural context. The Tribe sought damages arising from the government's handling of funds paid as compensation for reservation land flooded by the Parker Dam, funds awarded by the Indian Claims Commission, and funds held in Bureau of Indian Affairs suspense accounts. 150 Fed. Cl. at 191. The difficulty was that the Tribe could not say what, if anything, had gone wrong in the handling of its funds. Its complaint sought damages for "any and all mismanagement . . . disclosed by any accounting ordered by the Court." *Id.* at 205 n.32 (quoting the Tribe's complaint). This Court held that it could not order an

---

omitted) (quoting *Brandt*, 710 F.3d at 1379 n.7)); *Ute Indian Tribe of the Uintah & Ouray Indian Rsrv. v. United States*, 99 F.4th 1353, 1375 (Fed. Cir. 2024) ("Because the [Court of Federal Claims] action was filed before the District of Columbia action, . . . under our precedent section 1500 does not apply."); *cf. Tohono O'odham*, 563 U.S. at 315 ("The *Tecon* holding is not presented in this case because the CFC action here was filed after the District Court suit.").

accounting for that purpose, because its power to order one runs only "as a means of determining the quantum of damages resulting from a successful claim over which this Court possesses jurisdiction." *Id.* at 204. The Tribe's remedy for an inadequate accounting lay in district court, and only afterward — equipped with whatever that accounting disclosed — could the Tribe return to this Court. *Id.* at 213. In *Quapaw Tribe of Oklahoma v. United States*, 120 Fed. Cl. 612 (2015), for example, a tribe sued in district court, obtained an accounting as part of a settlement, and then came to this Court with the damages claim that the accounting had revealed. *Chemehuevi*, 150 Fed. Cl. at 217 n.57.

Our appellate court affirmed *Chemehuevi*, and, in doing so, endorsed the premise on which that sequence rests: "[t]he Court of Federal Claims lacks the authority to order an accounting, which is equitable relief, unless the plaintiff has established it is entitled to money damages," and "[i]nstead, plaintiffs must go to a court of equity, such as a district court, to obtain the desired equitable relief." *Chemehuevi Indian Tribe v. United States*, 104 F.4th 1314, 1321 (Fed. Cir. 2024). The distinction that decided the appeal is the one that matters here: the Tribe sought "an accounting to discover what claims it may have, rather than an 'accounting in aid of [the trial court's] jurisdiction to render a money judgment on that claim.'" *Id.* at 1323 (alteration in original) (quoting *Klamath & Modoc Tribes & Yahooskin Band of Snake Indians v. United States*, 174 Ct. Cl. 483, 490 (1966)). An accounting of the first kind is worth having for its own sake, and must be sought in district court; an accounting of the second kind is an instrument for computing a sum and may be sought here.

The principle that emerges is one of function rather than form. Sequencing is proper when the equitable decree is worth having in its own right — when it gives the plaintiff something that no money judgment could supply and that this Court has no power to award. Where the decree is instead the means by which money is to be delivered, the plaintiff is seeking money, and the case belongs here to begin with. As Justice Kavanaugh observed in *NIH*, "it is not evident that plaintiffs' challenge to [agency] guidance is separable from their challenge to the [resulting] grant terminations." 145 S. Ct. at 2665 (Kavanaugh, J., concurring in part and dissenting in part).

Consider two hypotheticals to illustrate the line. Suppose two grantees hold identical grants that have been terminated under the same agency policy. The first grantee asks a district court to set aside the policy itself, so that the agency may not apply it to that grantee's future awards. That decree may be worth having whether or not the grantee ever collects a single dollar on the terminated grant, as it changes what the agency

may do next year. The first grantee is properly in district court — arguably, at any rate — and if it later sues here for damages on the terminated grant, it will have followed the permissible sequence that *Chemehuevi* describes. The second grantee asks the district court to vacate the termination and to direct the agency to release the withheld funds. Ask what that decree would be worth to the second grantee if the money never arrived. The answer is nothing. The decree is not a remedy that the grantee wants for its own sake; it is the mechanism by which the grantee secures a payment under a contract. The second grantee has filed a Tucker Act case in APA clothing.[3]

Dr. Kamga's district court complaint appears to contain requests of both kinds. Some of what he seeks there resembles the first grantee's claim in the hypothetical above. He asks the district court to vacate DOT's "establishment of new priorities" and to enjoin DOT from "terminating, conditioning, or threatening to terminate grant funds" in that manner going forward. SDNY Compl. at 31. That relief operates on the agency's conduct prospectively, and *perhaps* it has value independent of any payment on the SEMPACT grant. It is (likely) properly sought in district court.[4] But "[v]acating the guidance does not reinstate terminated grants." *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring). A judgment setting aside DOT's priorities or policies would leave every element of Dr. Kamga's breach claim exactly where it stands today.

The remainder of Dr. Kamga's case resembles the second grantee's claim. Dr. Kamga asks the district court to vacate the May 2, 2025 termination decision and to enjoin DOT from "enforcing or giving effect to" it, "including by imposing or continuing closeout and clawback consequences premised on the unlawful termination." SDNY Compl. at 31. Strip away the vocabulary, and the operative effect of such vacatur or

[3] A contract claim for which the Tucker Act provides an adequate remedy in this Court cannot proceed in district court under the APA. *See Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1128 (Fed. Cir. 2007) (holding that, "[b]ecause an adequate remedy is available under the Tucker Act in the Court of Federal Claims, this case cannot proceed in the district court under the APA," and that "a claim that a government agency has violated a party's right to due process by refusing performance under a contract is substantively indistinguishable from a breach of contract claim"). Moreover, "[n]either the district court nor this Court has the power to order specific performance of a government contract," as the Tucker Act and Little Tucker Act provide the sole remedies for alleged breach of contract by the federal government. *Silver State*, 148 Fed. Cl. at 255 n.72 (citing *Stewart v. Mabus*, 2016 WL 753939, at *7 (D.D.C. Feb. 24, 2016)).

[4] And even that generously assumes that the question underpinning Justice Kavanaugh's point — whether there is a separate injury from the monetary one — can be answered in the affirmative. *See NIH*, 145 S. Ct. at 2665 (Kavanaugh, J., concurring in part and dissenting in part).

injunction is that DOT must treat the SEMPACT grant agreement as though it had never been terminated and must pay what the agreement calls for. That is an order enforcing a contractual obligation to pay money — the relief that *California* holds the APA's waiver of sovereign immunity does not reach, and that the Tucker Act assigns to this Court. 604 U.S. at 651.

This Court need not, and does not, decide what the district court may do. The point is narrower: for present purposes, the movants bear the burden of showing that deferring to the district court proceeding will resolve this case more efficiently than permitting this case to proceed. They have not, at least as of yet, made such a showing.

**D. The Motion Leaves Important Questions Unaddressed**

This case was the first of the two actions to be filed. Dr. Kamga invoked this Court's jurisdiction on June 12, 2026, Compl. at 1, and he filed in the district court eleven days later, SDNY Compl. at 1. That sequence is likely not a coincidence. Justice Barrett observed in *NIH* that "28 U.S.C. § 1500 bars CFC jurisdiction over claims pending in other courts when those claims arise from 'substantially the same operative facts,'" and that a plaintiff whose claims have the "requisite factual overlap . . . will have to proceed sequentially rather than simultaneously." 145 S. Ct. at 2662 (Barrett, J., concurring) (quoting 145 S. Ct. at 2674 n.4 (Jackson, J., concurring in part and dissenting in part) (quoting *Tohono O'odham*, 563 U.S. at 317)).

But neither party has addressed § 1500 — including the order in which these two actions were filed — or its implications, if any, for the two cases. Suffice it to say that this Court is not prepared at this stage to stay a first-filed action in favor of a later-filed one on a record that does not engage that question, or several other salient ones, except in the most conclusory fashion.

* * * *

In sum, the movants ask this Court to defer to a district court proceeding that, under *California* and *NIH*, likely cannot decide the claims pleaded here, and they do not explain why the first-filed action should be the one to wait. None of the movants' arguments persuade this Court otherwise. The joint motion is thus **DENIED**. This Court's ruling rests on the explanation that the parties' motion offered, however, and

does not hold that a stay could never be warranted in this case. The denial is accordingly *without prejudice*.

## III. CONCLUSION

For the reasons explained above, this Court: **DENIES**, without prejudice, the parties' joint motion to stay, ECF No. 10; **GRANTS** the government's alternative request for an extension of time; and **ORDERS** that Defendant shall file its response to the complaint on or before Friday, October 16, 2026.

A renewed motion to stay, if any — whether filed jointly or by any party — shall thoroughly address, at a minimum: (a) which of the claims pleaded in this Court the district court could actually resolve, in light of *California*, *NIH*, and *Bowen v. Massachusetts*, 487 U.S. 879 (1988), and considering Federal Circuit precedent; (b) whether vacatur of DOT's challenged priorities, or of the termination decision itself, would somehow reinstate the SEMPACT grant agreement or discharge the breach alleged here; (c) potential ripeness issues relating to the pending APA claims; and (d) the significance, if any, of the order in which the two actions were filed, considering 28 U.S.C. § 1500.

**IT IS SO ORDERED.**

s/Matthew H. Solomson
Matthew H. Solomson
Chief Judge