No. 26-870C
(Matthew H. Solomson)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

DR. CAMILLE KAMGA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

---

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

ERIC P. BRUSKIN
Assistant Director

IOANA C. MEYER
Trial Attorney
Commercial Litigation
Civil Division
Ben Franklin Station, P.O. Box 480
Washington, D.C. 20044
(202) 305-0001

October 19, 2026

*Attorneys for Defendant*

# TABLE OF CONTENTS

QUESTIONS PRESENTED .... 1
SUMMARY OF THE CASE .... 2
STATEMENT OF RELEVANT FACTS .... 2
I. The University Transportation Center Program Grants .... 2
II. DOT Awards a UTC Grant to SEMPACT .... 4
III. Dr. Kamga's Complaint .... 6
ARGUMENT .... 7
I. Standards of Review .... 7
A. Jurisdiction .... 7
B. Failure to State a Claim Upon Which Relief May be Granted .... 8
II. This Court Lacks Jurisdiction Over Dr. Kamga's Complaint .... 9
III. Alternatively, the Complaint Fails to State a Claim .... 16
CONCLUSION .... 16

# TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Acceptance Ins. Co. v. United States*,
583 F.3d 849 (Fed. Cir. 2009) ........ 9

*Allen Eng'g Contr., Inc. v. United States*,
115 Fed. Cl. 457 (2014) ........ 3, 4, 6

*Anderson v. United States*,
344 F.3d 1343 (Fed. Cir. 2003) ........ 9, 11, 13-14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 9

*Boyle v. United States*,
200 F.3d 1369 (Fed. Cir. 2000) ........ 8

*Carter v. United States*,
102 Fed. Cl. 61 (2011) ........ 13

*Cedars-Sinai Med. Ctr. v. Watkins*,
11 F.3d 1573 (Fed. Cir. 1993) ........ 7

*Chancellor Manor v. United States*,
331 F.3d 891 (Fed. Cir. 2003) ........ 8

*Columbus Reg'l Hosp. v. United States*,
990 F.3d 1330 (Fed. Cir. 2021) ........ 16

*Constructora Guzman, S.A. v. United States*,
161 Fed. Cl. 686 (2022) ........ 13

*Dow Jones & Co., Inc. v. Ablaise Ltd.*,
606 F.3d 1338 (Fed. Cir. 2010) ........ 7

*Dynalectron Corp. v. United States*,
4 Cl. Ct. 424, 428 *aff'd*, 758 F.2d 665 (Fed. Cir. 1984) ........ 7

*Fayetteville Investors v. Commercial Builders, Inc.*,
936 F.2d 1462 (4th Cir. 1991) ........ 3

*Fed. Deposit Ins. Corp. v. United States*,
342 F.3d 1313 (Fed. Cir. 2003) ........ 10, 12

*First Hartford Corp. Pension Plan & Trust v. United States*,
194 F.3d 1279 (Fed. Cir. 1999) ........ 9, 10

*Flexfab, LLC v. United States*,
424 F.3d 1254 (Fed. Cir. 2005) .......... 10

*G4S Tech. LLC v. United States*,
114 Fed. Cl. 662 (2014) .......... 12

*German Alliance Ins. Co. v. Home Water Supply Co.*,
226 U.S. 220 (1912) .......... 10

*Glass v. United States*,
258 F.3d 1349 (Fed. Cir. 2001) .......... 10

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016) .......... 3

*Ground Improvement Techniques, Inc. v. United States*,
108 Fed. Cl. 162 (2012) .......... 8

*Harbert/Lummus Argifuels Projects v. United States*,
142 F.3d 1429 (Fed. Cir. 1998) .......... 8

*Irwin Cnty. v. United States*,
170 Fed. Cl. 355 (2024) .......... 13, 14

*Kawa v. United States*,
86 Fed. Cl. 575, *motion for relief from judgment denied*, 368 Fed. Appx. 106 (Fed. Cir. 2009)
.......... 11

*Normandy Apartments, Ltd. v. United States*,
100 Fed. Cl. 247 (2011) .......... 8

*Pac. Gas & Elec. Co. v. United States*,
838 F.3d 1343 (Fed. Cir. 2003) .......... *passim*

*Reynolds v. Army and Air Force Exch. Serv.*,
846 F.2d 746 (Fed. Cir. 1988) .......... 7-8, 8

*Riviera Drilling & Exploration Co. v. United States*,
61 Fed. Cl. 395 (2004) .......... 8

*R&R Conner Aviation, LLC v. United States*,
174 Fed. Cl. 89 (2024) .......... 12, 13

*S. Cal. Fed. Sav. & Loan Ass'n v. United States*,
422 F.3d 1319 (Fed. Cir. 2005) .......... 8, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 3

*Thakur v. Trump*,
800 F. Supp. 3d 1044 (N.D. Cal. 2025) .......... 14-15

*Todd Constr., L.P. v. United States*,
656 F.3d 1306 (Fed. Cir. 2011) .......... 8-9, 9

*Trauma Serv. Grp. v. United States*,
104 F.3d 1321 (Fed. Cir. 1997) .......... 8

*United States v. Mitchell*,
445 U.S. 535 (1980) .......... 7

*United States v. Sherwood*,
312 U.S. 584 (1941) .......... 7

*United States v. Testan*,
424 U.S. 392 (1976) .......... 7

*Winter v. FloorPro, Inc.*,
570 F.3d 1367 (Fed Cir. 2009) .......... 7

**Statutes**

28 U.S.C. § 1491 .......... 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| DR. CAMILLE KAMGA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 26-870C<br>(Chief Judge Matthew H. Solomson) |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss plaintiff Dr. Camille Kamga's complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim. In support of this motion, we rely upon the complaint, the following brief, and the attached appendix.[1]

**QUESTIONS PRESENTED**

1. Dr. Kamga does not allege that he is in privity with the United States, and nothing in the grant agreement identifies him as an intended beneficiary of the grant. Does the Court possess subject matter jurisdiction to consider Dr. Kamga's breach of contract and breach of the duty of good faith and fair dealing claims?

2. On the same allegations, has Dr. Kamga stated a claim for third-party beneficiary breach of contract?

---

[1] We respectfully reserve the right to challenge any of the facts alleged by Dr. Kamga in the future, should this motion to dismiss be denied.

## SUMMARY OF THE CASE

The U.S. Department of Transportation (DOT) awarded a grant to the Center for Social and Economic Mobility for People And Communities through Transportation (SEMPACT), which is a consortium of colleges and universities led by the City College of New York (CCNY). The grant was awarded under a general program that funds transportation research at institutions of higher education. Accordingly, the purpose of the grant is to support the research work that SEMPACT does, and not to directly benefit the multiple researchers identified as contributing to the center's work.

Dr. Kamga is named in SEMPACT's application and statement of work—incorporated by reference into the agreement—as one of many researchers supporting the center's work, and as the Center Director. But Dr. Kamga is not named anywhere in the grant agreement documents as a direct intended beneficiary under the grant. Though his position as Center Director is important, and carries responsibilities of coordinating with DOT, these factors do not establish a clear intent to benefit Dr. Kamga, or the Center Director specifically as an intended third-party beneficiary. Therefore, Dr. Kamga is neither in privity of contract with the Government, nor is he an intended third-party beneficiary of the grant agreement. Accordingly, the Court must dismiss this complaint for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim.

## STATEMENT OF RELEVANT FACTS

### I. The University Transportation Center Program Grants

Congress created the University Transportation Center (UTC) Program to fund transportation research at institutions of higher education approximately 40 years ago. Compl. ¶ 1; Surface Transportation and Uniform Relocation Assistance Act of 1987, Pub. L. No. 100-17, § 314, 101 Stat. 132, 230–32. Each time Congress reauthorizes the program, DOT selects

colleges and universities to serve as UTCs and awards each UTC a grant to fulfill its duties, with the primary purpose of transportation-related research. *Id.*

In May 2022, DOT published a Notice of Funding Opportunity for the current iteration of the UTC program. *Id.* ¶ 13; Appx1-40[2]. This Notice explained that DOT would select ten regional UTCs to each receive awards of up to $3 million for every fiscal year from 2022 through 2026. Compl. ¶ 14; Appx10-14. UTCs would also have to obtain matching funds from non-Federal sources. Compl. ¶ 14; Appx13. SEMPACT applied to serve as the regional UTC for Region 2. Compl. ¶¶ 2, 16; Appx41-129. Region 2 covers New York, New Jersey, Puerto Rico, and the U.S. Virgin Islands. Compl. ¶ 16. SEMPACT proposed a number of projects in its application, including a report on transportation challenges in the region, as well as research projects such as retrofitting highway bridges to prevent collapse, improving freight supply chains to support increased e-commerce trade, and designing and retrofitting transportation infrastructure to withstand potential impacts from major events such as Hurricane Sandy. Compl. ¶ 16.

SEMPACT's application identified specific team members who would participate in the research and lead particular projects. *Id.*; Appx47. One of the proposed team members was Dr. Kamga, who the application also identified as the SEMPACT Center Director. Appx78. In this

[2] Also available at U.S. Dep't of Transp., Notice of Funding Opportunity for the Univ. Transp. Ctrs. Program 7 (May 2022), https://www.transportation.gov/sites/dot.gov/files/2022-05/UTC%20NOFO%202022.pdf. The Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference [. . .]." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)). "[T]he exhibit-prevails rule, [ ] provides that in the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)); *see also Allen Eng'g Contr., Inc. v. United States*, 115 Fed. Cl. 457, 464 (2014).

position, Dr. Kamga would be "responsible for implementing the Center's programs and ensuring compliance with all other UTC Program requirements." Compl. ¶ 17; Appx78. In addition, Dr. Kamga would also have "overall Center responsibility, including the conduct of all programs, development of new initiatives and public presentation of SEMPACT business and accomplishments." Compl. ¶ 17; Appx78. Finally, Dr. Kamga would "serve as liaison with [DOT], sponsors and other groups," and he would work with "Technical Committee Chairs and SEMPACT staff" to "develop[] the annual plan, sets agendas for all meetings, and ensure[] budget compliance." Compl. ¶ 17; Appx78.

## II. DOT Awards a UTC Grant to SEMPACT

Following full and open competition, on February 21, 2023 DOT awarded SEMPACT the Region 2 UTC grant for a total amount of $15 million, to be disbursed in annual increments over the following five years. Compl. ¶ 18. The initial grant agreement—effective June 1, 2023—awarded SEMPACT its first installment of $3 million and explained that DOT "expects to award four additional increments of funding as Modifications to this Grant Agreement." *Id.* ¶ 19; Appx130. The agreement further provides that "[u]pon execution by the Grant Recipient named in the Notification of Award below, the [DOT], Office of the Assistant Secretary for Research and Technology (OST-R) and the Grant Recipient have entered into a Grant." Appx130. The "Grant Recipient" was identified as the "Research Foundation of City University of New York -- City College", and the purpose of the grant was to "provide funding from the [] DOT for a Regional University Transportation Center headquartered at City College of New York." *Id.* The agreement was signed by a DOT representative and Matthew Drost, who is identified as the Chief Counsel of RF-CUNY. Finally, the agreement's statement of work section explained that the "Application that the Grant Recipient submitted for this Grant under

the UTC Program's FY 2022 Notice of Funding Opportunity serves as a general description of work to be done under the Grant." Appx131.

The grant agreement also explains that "the following documents are attached or are incorporated by reference and made part of the Grant," listing as follows "(1) *Grant Deliverables and Reporting Requirements for 2023 University Transportation Centers*, dated June 2023, (2) *General Provisions of Grants for 2023 University Transportation Centers*, dated June 2023, and (3) the Grant Recipient's Application submitted for this Grant." Appx130. The "General Provisions of Grants for 2023" apply to all UTC grant agreements awarded in a particular year, and can be accessed online. Appx133-167.[3] These general provisions explain that the grant recipient "must commence, carry out, and complete its work . . . in accordance with the provisions hereof, the Grant Agreement, . . . the activities outlined in the Recipient's application for funding, . . . and all applicable laws, regulations, [DOT] directives, and published Federal policies." Appx137. The section of the general provisions titled "Specific Programmatic Requirements" deals with the involvement of Center Directors. Appx141. This provision explains that the "Center Director's meaningful direct involvement in the Center's operations will include but will not be limited to activities such as "[i]n-person attendance at meetings," keeping the relevant parties "informed of new developments," "[r]esponding to Program enquiries in a timely manner," and "[e]nsuring on time submission of grant deliverables." Appx141; *see also* Compl. ¶ 21.

The general provisions further provide in this same section for any changes in the Center Director. Appx141. Specifically, the general provisions state that the DOT's "decision to award

[3] U.S. Dep't of Transp., Univ. Transp. Ctrs. Program: General Provisions of Grants 12 (June 2023), https://www.transportation.gov/sites/dot.gov/files/2023-06/UTC%20General%20Provisions%20of%20Grants%20FINAL%20June%202023.pdf.

a UTC Grant to a Recipient is based to a considerable extent upon its evaluation of the proposed Center Director's knowledge of the field of study and his/her capabilities to lead a UTC." Appx141; *see also* Compl. ¶ 21. Per these provisions, notification is required if the Recipient becomes aware that the Center Director will devote less time to the Center than previously committed, or otherwise leaves or relinquishes direction of the UTC. Appx141. In "the absence of an approved Center Director, OST-R may choose to negotiate an appropriate modification to the Grant Agreement or to begin termination procedures." *Id.*

Once DOT awarded the grant, Dr. Kamga was in ongoing, direct communication with DOT grant management staff. Compl. ¶ 22. Dr. Kamga further asserts that SEMPACT carried out its work as promised in its application. *Id.* ¶¶ 28-33. The complaint alleges that on May 2, 2025, the DOT terminated the SEMPACT grant agreement. *Id.* ¶ 45. Dr. Kamga alleges that as a result of this termination, among other alleged harms, he "has had to significantly slow or even halt his own critical research." *Id.* ¶ 53. In addition, Dr. Kamga claims that as the Center Director, he "has had to reallocate considerable time to seeking new sources of funding for SEMPACT, hindering even his non-SEMPACT research." *Id.*

## III. Dr. Kamga's Complaint

On June 12, 2026, Dr. Kamga filed the subject complaint, bringing two counts against the United States. The first count is for breach of contract of the SEMPACT grant agreement pursuant to a third-party beneficiary theory. Compl. ¶¶ 57-74. The second count is for a breach of the implied duty of good faith and fair dealing, again alleging that Dr. Kamga is an intended third-party beneficiary of the grant agreement. *Id.* ¶¶ 75-84. Dr. Kamga alleges that these breaches have caused him to suffer damages in an amount to be determined at trial. *Id.* ¶¶ 74, 84.

# ARGUMENT

## I. Standards of Review

### A. Jurisdiction

The United States Court of Federal Claims is a court of limited jurisdiction. *Dynalectron Corp. v. United States*, 4 Cl. Ct. 424, 428 *aff'd*, 758 F.2d 665 (Fed. Cir. 1984) (table). Absent congressional consent to entertain a claim against the United States, this Court lacks authority to grant relief. *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Generally, "the United States, as sovereign, 'is immune from suit save as it consents to be sued. . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Testan,* 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). This Court's authority to grant relief is limited by the extent to which the United States has waived sovereign immunity through the Tucker Act and the Contract Disputes Act (CDA). *See* 28 U.S.C. § 1491; *Testan,* 424 U.S. at 399. As waivers of sovereign immunity, both the Tucker Act and the CDA must be strictly construed, resolving ambiguities in favor of immunity. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980) (Tucker Act); *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1370 (Fed Cir. 2009) (CDA).

Subject-matter jurisdiction is a threshold requirement that must be determined at the outset of a case. *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010). When a RCFC 12(b)(1) motion challenges the Court's subject-matter jurisdiction based upon the sufficiency of the pleading's allegations, those allegations are taken as true and construed in a light most favorable to the complainant. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). Plaintiff bears the burden of proving, by a preponderance of the evidence, that the Court possesses subject-matter jurisdiction. *Reynolds v. Army and Air Force Exch. Serv.*,

846 F.2d 746, 748 (Fed. Cir. 1988). The Court may look to evidence outside of the pleadings to determine the existence of subject-matter jurisdiction. *See id.*

### B. Failure to State a Claim Upon Which Relief May be Granted[4]

Even if this Court possesses jurisdiction to entertain an action, a complaint must be dismissed for failure to state a claim where the plaintiff fails to allege facts sufficient to establish a valid contract with the United States. *See, e.g.*, *Harbert/Lummus Argifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed. Cir. 1998); *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1327 (Fed. Cir. 1997). When reviewing a RCFC 12(b)(6) motion, the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in favor of the non-movants. *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000). "However, legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." 2A JAMES WM. MOORE & JO DESHA LUCAS, MOORE'S FEDERAL PRACTICE, ¶ 12.07 [2.-5] at 12-84–12-85 & n.6 (2d ed. 1996) (collecting cases, interpreting FED. R. CIV. P. 12(b)(6)); *accord Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1316

---

[4] This Court and the Federal Circuit have considered a lack of privity of contract to be a jurisdictional bar. *See, e.g.*, *S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1328 n.3 (Fed. Cir. 2005) (stating that "standing and privity of contract with the government are questions of subject matter jurisdiction") (citing *Chancellor Manor v. United States*, 331 F.3d 891, 899 (Fed. Cir. 2003)); *Normandy Apartments, Ltd. v. United States*, 100 Fed. Cl. 247, 254–58 (2011) (dismissing a contract claim for lack of jurisdiction because the plaintiff was not in privity with the United States). However, this Court has also considered a lack of privity of contract under a RCFC 12(b)(6) motion. *See, e.g.*, *Riviera Drilling & Exploration Co. v. United States*, 61 Fed. Cl. 395, 400 (2004) (stating that "because authority is divided on the appropriate motion, RCFC 12(b)(1) or RCFC 12(b)(6), pursuant to which the court may dismiss contract claims for lack of privity, the court will now consider plaintiff's contract claims under RCFC 12(b)(6)") (citations omitted). In *Ground Improvement Techniques, Inc. v. United States*, the Court dismissed the complaint for lack of jurisdiction based on lack of privity with the Government but noted that the standard for dismissal under RCFC 12(b)(6) was met as well. 108 Fed. Cl. 162, 166 n.2 (2012), *aff'd*, 618 F. App'x 1020 (Fed. Cir. 2015).

(Fed. Cir. 2011) ("we are not required to assume that legal conclusions are true"); *Acceptance Ins. Co. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). More specifically, "[a] claim has facial plausibility when the plaintiffs plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the" claim. *Id.* at 678; *accord Todd Constr.*, 656 F.3d at 1316. "In pleading a claim founded on a contract . . . [the plaintiff] must identify the substantive provisions of the contract . . . on which [plaintiff] relies," either by describing the relevant provisions or by attaching a copy of the contract with appropriate references. RCFC 9(k).

**II. This Court Lacks Jurisdiction Over Dr. Kamga's Complaint**

Dr. Kamga is not in privity of contract with the United States, and the allegations in the complaint are insufficient to establish that this Court otherwise possesses jurisdiction over Dr. Kamga's alleged third-party beneficiary claims. Accordingly, the Court must dismiss the complaint.

As an initial matter, Dr. Kamga is not in privity of contract with the United States and his complaint does not allege that he is.[5] "To have standing to sue the sovereign on a contract claim, a plaintiff must be in privity of contract with the United States," *Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003), and "[s]tanding is a threshold jurisdictional issue that implicates Article III of the Constitution." *S. Cal. Fed. Sav. & Loan Ass'n*, 422 F.3d at 1328.

[5] Intended third-party beneficiaries may bring suit against the Government in this Court "despite lack of privity." *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999).

Dr. Kamga is not the grant recipient and, despite his exhortations to the contrary, he is not the intended beneficiary of the agreement. He does not have any written agreement between him and the United States. Rather, he claims that he is "a third-party beneficiary of the contract because the agreement is clearly intended to benefit him, and his involvement was a material term of the parties' agreement." Compl. ¶ 61. Limited exceptions to the privity requirement are recognized when a "party standing outside of privity by contractual obligation stands in the shoes of a party within privity," such as when a party can demonstrate that it was an intended third-party beneficiary under the contract. *See, e.g.*, *First Hartford Corp.*, 194 F.3d at 1289.

Third party beneficiary status, however, is an "exceptional privilege," *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912), and "the requirements to demonstrate third-party beneficiary status are stringent." *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1343, 1352 (Fed. Cir. 2003) (internal quotation omitted)); *see also Flexfab, LLC v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005) (holding that third-party beneficiary status "should not be granted liberally"). "Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit." *German All.*, 226 U.S. at 230. To demonstrate third-party beneficiary status, therefore, a party must prove that "the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party *directly*." *Flexfab*, 424 F.3d at 1259 (emphasis added) (quoting *Glass v. United States*, 258 F.3d 1349, 1354 (Fed. Cir. 2001)). Third-party beneficiary status is not established "merely because [a] contract would benefit [a party]." *Fed. Deposit Ins. Corp. v. United States*, 342 F.3d 1313, 1319 (Fed. Cir. 2003).

Dr. Kamga cannot meet these stringent requirements. Nothing in either the grant agreement or the general UTC grant agreement provisions provides that Dr. Kamga himself is an intended third-party beneficiary of the agreement. *See Kawa v. United States*, 86 Fed. Cl. 575, 587–88; (noting that "the duty lies with the contractor and/or the third party to make any third-party beneficiary status known to the person in the Government with contracting authority"), *motion for relief from judgment denied*, 368 Fed. Appx. 106 (Fed. Cir. 2009). Nor do any of the grant agreement documents indicate any specific identifiable benefit that was intended to flow from DOT to Dr. Kamga, or even specifically to the Center Director. Dr. Kamga alleges that "[h]e is explicitly identified as the Center Director," compl. ¶ 61, and that his name appears as a researcher under the program, *see* Appx46. But merely being named in the agreement does not indicate that Dr. Kamga has a "direct right to compensation[,] or the power to enforce that right against the promisor." *Anderson*, 344 F.3d at 1352 (internal quotation marks and citations omitted). Nor does the fact that Dr. Kamga's name and position title appear in the grant agreement demonstrate a clear intent to benefit him "personally, independent of his or her status as a member of a group generally benefited by a contract's performance." *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1361 (Fed. Cir. 2016) (internal quotations omitted).

Rather, the agreement states that the purpose of the grant itself is to "conduct a multidisciplinary program of transportation research, education, and technology transfer through a Regional University Transportation Center (UTC) *headquartered at City College of New York* and focused on Improving Mobility of People and Goods." Appx130 (emphasis added). Further, the purpose of the grant agreement is to "provide funding from the US DOT for a Regional University Transportation Center headquartered at City College of New York." *Id.* SEMPACT's application and statement of work demonstrates that the focus of the grant is on the

research to be conducted. Specifically, the document explains that "the SEMPACT team will focus research in four priority areas that address both USDOT & regional needs." Appx45. And that to "support our planned research activities and our educational and technology transfer missions, . . . we have assembled an expert consortium of universities." *Id.* Accordingly, SEMPACT stated that it would "leverage the strengths and talents of leading researchers" to fulfill its stated goals. *Id.* at Appx46.

The organization's use of researchers to fulfill the grant's statement of work is most similar to a prime contractor using subcontractors to complete contract work. But the Federal Circuit has long held that subcontractors "are not third[-]party beneficiaries merely because the contract would benefit them." *F.D.I.C. v. United States*, 342 F.3d 1313, 1319 (Fed. Cir. 2003); *see also G4S Tech. LLC v. United States*, 114 Fed. Cl. 662, 670 (2014), *aff'd*, 779 F.3d 1337 (Fed. Cir. 2015) ("[I]t remains the general rule that a subcontractor that agrees to supply materials or labor to a general contractor is only an incidental beneficiary of any contract between the general contractor and its ultimate client."). Even if it were true that Dr. Kamga would financially benefit from the grant agreement—as demonstrated by his allegation that without the grant he "has had to significantly slow or even halt his own critical research," Compl. ¶ 53—so would every other researcher named in SEMPACT's grant application and statement of work. Just as every subcontractor under a prime contract benefits financially due to the award of the contract. When a prime contract is terminated, those subcontractors also have to halt their own work. In *R&R Conner Aviation, LLC v. United States*, the Court found that the prime contract did not contain any express declaration of intent to benefit R&R Conner or other subcontractors. 174 Fed. Cl. 89, 95 (2024). Instead, the prime contracts merely anticipated that the prime would engage subcontractors to complete the project work, and therefore the

subcontractors could not be third-party beneficiaries. *Id.* Here too, the various researchers named in the grant application and statement of work are merely individuals engaged to complete work to advance the center's purpose, not intended third-party beneficiaries.

Further, merely because a contractor's proposal identifies a subcontractor as performing some aspect of the work does not mean the Government intends to directly benefit that subcontractor. *See, e.g.*, *Irwin Cnty. v. United States*, 170 Fed. Cl. 355, 363 (2024) ("[T]he government regularly knows who those subcontractors are and what the subcontractors' responsibilities are under the contract, and, in many cases, both approves the subcontractors and takes their experience and capabilities into account in awarding the prime contract. But none of this, without more, makes a subcontractor an intended third-party beneficiary of a contract."). In *Constructora Guzman, S.A. v. United States*, the Court found that the lack of any provision whereby the Government would pay the subcontractors directly defeated a claim for third-party beneficiary status. 161 Fed. Cl. 686, 694 (2022) (explaining that "cases in which a subcontractor was found to have third-party beneficiary status involve a payment mechanism by which the subcontractor has *direct* access to payments made by the government." (emphasis added)). And in *Carter v. United States*, the Court found that the plaintiff milk producers were in fact third-party beneficiaries. 102 Fed. Cl. 61, 70 (2011). There, the contract was expressly drafted to distribute milk through the prime contractor to producers suffering from drought conditions, and set guidelines about the producers and third parties who could receive the product. *Id.*

Dr. Kamga's research is not called out in particular as a purpose of the grant agreement, rather, it is the work of the center and the resultant research—regardless of who is performing that research—that is important. *See* Appx47. *Anderson*, 344 F.3d at 1352 (holding that the contract must demonstrate a clear intent to benefit a third-party beneficiary personally and

independent of his or her status as a member of a group generally benefited by a contract's performance). Thus, Dr. Kamga is not a third-party beneficiary because UTC "grant agreements fund research for the benefit of the general public, in line with the agencies' statutory purposes, and not in order to generate work for, or financially support, individual researchers." *Thakur v. Trump*, 800 F. Supp. 3d 1044, 1064 (N.D. Cal. 2025).

Dr. Kamga alleges that as the Center Director, he played an outsize role in DOT's decision to award SEMPACT the grant, and therefore the grant is intended to benefit him. In his complaint, Dr. Kamga states that DOT's decision to award the grant "is based to a considerable extent upon its evaluation of the proposed Center Director's knowledge of the field of study and his/her capabilities to lead a UTC," citing to the general provisions applicable to all UTC grant agreements. Compl. ¶ 61. He also points to the section in the general provisions that highlights the importance of the Center Director role and requires notice in the event of a change in the Center Director. *Id.* Notably, Dr. Kamga alleges that the "agreement also not only contemplated but explicitly defined Dr. Kamga's 'meaningful direct involvement in the Center's operations' as the Center Director," citing again to the general provisions. *Id.* To be clear, the general provisions make note of the importance of the Center Director role, but not of a particular person, let alone Dr. Kamga, directly. Appx141. But despite the importance placed on the Center Director role, nothing in the grant agreement states that the Center Director is due some specific benefit under the agreement. *See id.* Instead, the Center Director must fulfill certain duties under the agreement, such as attending meetings and responding to enquiries, but fulfillment of such duties does not confer any additional benefits. *Id.* Further, managing operations and serving as a point of contact with DOT does not establish an intent to benefit Dr. Kamga or the Center Director as an intended third-party beneficiary. *Irwin Cnty.*, 170 Fed. Cl. at

363; *see also Thakur*, 800 F. Supp. 3d at 1064 (declining to find plaintiff constituted third-party beneficiary despite being the UTC director).

The Federal Circuit examined a similar case in *Anderson v. United States*. There, the Court held that simply because two individuals were named beneficiaries of a trust that was owed certain contractual obligations from the Government, the two were not third-party beneficiaries . *See* 344 F.3d at 1351–52. Importantly, in that case, there was nothing to suggest that the Government had made any promises expressly intended to "benefit [the individuals] *personally, independently of their status as beneficiaries* of the Trust." *Id.* at 1352 (emphasis added). The same was true in the Federal Circuit's decision in *Pacific Gas & Electric Co. v. United States*. There, appellants contended that they were third-party beneficiaries of a contract with the United States based on a particular provision. 838 F.3d at 1362. Appellants in that case were consumers of energy produced by the United States, but not in privity of contract with the Government. *Id.* at 1347. Instead, appellants entered into participation agreements with two middlemen entities that facilitated and operated the electricity markets. *Id.* Appellants claimed that overpayment provisions of their participation agreements gave them the right to a refund by sellers or any overpayments appellants made when purchasing electricity, and thus became third-party beneficiaries of the agreements. *Id.* at 1362. The Court examined the language of the agreements and found that the text quoted held the middlemen entities solely responsible for collecting and disbursing overpayments. *Id.* Thus, the Court determined that there was "no specific, identifiable benefit that flows directly from producer to consumer," and thus appellants could not be third-party beneficiaries. *Id.* The Court concluded that "Appellants cannot demonstrate any particular benefit flowing to them from the [G]overnment agencies, let alone

that the exchanges' contracts with the [G]overnment intended to benefit them specifically, independent of all other market participants." *Id.*

Again, there is nothing in the grant agreement here that specifies a particular benefit flowing from DOT to Dr. Kamga himself, independent of all other officers and researchers who are part of SEMPACT and RF-CUNY. Thus, Dr. Kamga cannot demonstrate that he is in privity of contract with the United States, and this Court therefore does not possess subject matter jurisdiction to consider either of his two counts.

**III. Alternatively, the Complaint Fails to State a Claim**

Although the Court should dismiss the complaint for lack of subject matter jurisdiction, the deficiencies raised above also show why Dr. Kamga has failed to state a claim upon which relief may be granted. *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1341-42 (Fed. Cir. 2021) (discussing the difference between jurisdiction and failure to state a claim in a similar situation). For example, the complaint is devoid of any allegations that Dr. Kamga is in privity of contract with the United States. In addition, even if we take Dr. Kamga's factual allegations as true, the complaint still cannot support a claim that Dr. Kamga is a third-party beneficiary. Accordingly, in the alternative, the complaint should be dismissed for failure to state a claim.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss Dr. Kamga's complaint for lack of jurisdiction or, alternatively, for failure to state a claim.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

ERIC P. BRUSKIN

Assistant Director

/s/Ioana C. Meyer
IOANA C. MEYER
Trial Attorney
Commercial Litigation
Department of Justice
Ben Franklin Station, P.O. Box 480
Washington, D.C. 20044
(202) 305-0001
Ioana.C.Meyer@usdoj.gov

October 19, 2026

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing "Defendant's Motion to Dismiss the Complaint" to be served on all counsel of record via email on October 19, 2026, at the following email addresses:

Amy Powell
Lawyers for Good Government
319 F St NW
Washington, DC 20004
Amy@lawyersforgoodgovernment.org

Kunyu Ching
Lawyers for Good Government
319 F St NW
Washington, DC 20004
kunyu@lawyersforgoodgovernment.org

/s/Ioana C. Meyer
Ioana C. Meyer